**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CORUS BANK, N.A., a national banking association,<br><br>       Plaintiff,<br><br>v.<br><br>EDUARD DE GUARDIOLA,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

```
FILED: JUNE 12, 2008
08CV3409
JUDGE ANDERSEN
MAGISTRATE JUDGE MASON
EDA
```

## COMPLAINT

Plaintiff Corus Bank, N.A., by its counsel, states for its Complaint against defendant Eduard de Guardiola as follows:

### Nature of the Action

1.    This is an action to recover against Defendant Eduard de Guardiola for breach of his personal guaranty of a defaulted condominium conversion loan.

### Parties

2.    Plaintiff Corus Bank, N.A. ("Corus") is a national banking association with its principal place of business in the State of Illinois.

3.    Defendant Eduard de Guardiola ("de Guardiola") is a citizen of the State of Georgia.

### Jurisdiction and Venue

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3), because it is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the acts giving rise to the claim occurred in this district.

**Factual Allegations**

**A.      De Guardiola Signs A Guaranty for the Project Loan**

6.      On or about June 12, 2005, de Guardiola was personally present in the State of Illinois for the purpose of securing a loan in connection with the acquisition and condominium conversion of property commonly known as the Lansbrook Village Apartments (the "Project").

7.      After unsuccessfully meeting with representatives of another prospective lender and while still in the State of Illinois, de Guardiola contacted a representative of Corus and solicited Corus's interest in the Project.

8.      After receiving an expression of interest from the Corus representative, de Guardiola traveled to Corus's office in Chicago, Illinois, and negotiated the terms of a Project loan from Corus.

9.      On July 15, 2005, Corus made a loan for the Project in the amount of $112,560,000 (the "Loan") to PRE Property B, LLC, Carvill Limited Partnership, and Florida Land Parcels, LLC (collectively and each a "Borrower").

10.     De Guardiola directly or indirectly owns an interest in each Borrower and derived material financial benefit from the Loan.

11.     In connection with the Loan, Borrower executed and delivered to Corus a Loan Agreement, a Tranche A Note and a Tranche B Note (collectively, the "Note"), a Mortgage and additional loan documents evidencing the Loan and securing repayment.  The Loan Agreement, Note, Mortgage and other loan documents, pursuant to the modifications as alleged below, are collectively referred to herein as the "Loan Documents."

12.     In connection with the Loan, de Guardiola executed a Non-Recourse Carveout Guaranty dated July 15, 2005.

13.     On or about May 31, 2006 and again on March 16, 2007, Corus and Borrower entered into certain modifications of the Loan Documents.  Contemporaneous with the May 31, 2006 Modification and the March 16, 2007 Modification, de Guardiola reaffirmed his obligations under the July 15, 2005 Guaranty.

**B.     Pursuant to a Work-Out Agreement and Third Modification of the Loan, de Guardiola Agrees to Amend the July 15, 2005 Guaranty**

14.     Prior to April 2, 2007, Borrower and de Guardiola approached Corus explaining that despite modification, the Project was failing economically.  Borrower and de Guardiola requested that Corus further modify the Loan by extending the maturity date and lowering the interest rate on the Loan, among other things.  In exchange for these further modifications, de Guardiola proposed that he execute a recourse guaranty.

15.     On or about April 2, 2007, Corus and Borrower entered into a third modification of the Loan Documents which, among other things, extended the maturity date, lowered the interest rate on the Tranche B Note and reallocated certain costs.

16.     Contemporaneous with the April 2, 2007 modification, de Guardiola executed an Amended and Restated Guaranty dated April 2, 2007 ("Recourse Guaranty").  A true and correct copy of the Recourse Guaranty is attached hereto as Ex. A.

17.     Under the Recourse Guaranty, de Guardiola agreed to at least four obligations of guaranty.  First, de Guardiola agreed to the "Recourse Provision" of the Recourse Guaranty. Under the Recourse Provision, de Guardiola irrevocably and unconditionally guaranteed repayment of $8,000,000 of the principal balance of the Loan (the "Principal Guaranty Amount"), plus accrued but unpaid interest thereon, provided that "the following amounts paid

to [Corus] by Borrower or [de Guardiola] from Permitted Sources (defined below), but not otherwise, shall reduce the Principal Guaranty Amount: (x) up to $5,000,000 for interest paid on the Loan from March 30, 2007 through March 30, 2008 ("Interest Guaranty Cap"); (y) up to $2,000,000 paid for real estate taxes and tax escrow deposits with [Corus] for taxes for 2007 and subsequent years from March 30, 2007 through March 30, 2008 (but no more than $1,350,000 paid on taxes for any tax year shall be credited) ("Tax Guaranty Cap") and (z) up to $1,000,000 paid for insurance premiums for the Project from March 30, 2007 to March 30, 2008 ("Insurance Guaranty Cap")."

18.    The Recourse Provision defines "Permitted Sources" as "solely, (x) NOI of the Project from March, 2007 or any later month and (y) additional equity contributions to Borrower by [de Guardiola] or other holders of equity interests in Borrower which equity contributions are not derived from the Project."

19.    Second, de Guardiola agreed to the terms of the "Tax Provision" of the Recourse Guaranty.  Under the Tax  Provision, de Guardiola agreed to pay, when due, all real estate taxes on the Project for 2006 and 2007 determined to be due and owing, including any interest and penalties, in excess of amounts paid under protest.

20.    Third, de Guardiola agreed to the terms of the "Waste Provision" of the Recourse Guaranty.  Under the Waste Provision, which was also part of the July 15, 2005 Guaranty, de Guardiola agreed to "be liable for, and [to] indemnify, defend and hold [Corus] harmless from and against, any and all loss (including principal), damage, cost, expense (including reasonable attorneys' fee and expenses), claims or other obligations incurred or suffered by [Corus] due to . . . the commission of waste with regard to the Project by any Borrower or Guarantor."

21.    Fourth, de Guardiola agreed to the terms of the "Full Recourse Provision" of the Recourse Guaranty.  Under the Full Recourse Provision, which was also part of the July 15, 2005 Guaranty, de Guardiola agreed that if he or Borrower "affirmatively seeks, in any case, action, suit or proceeding to suspend, reduce, impede or impair [Corus's] right of recourse to the Project or any part thereof . . . or . . . engages in any act, omission, or misrepresentation which is intended to have the effect of and has the effect of materially suspending, delaying, reducing, impeding or impairing [Corus's] right of recourse to the Project or any part thereof then, [de Guardiola] shall be liable for all loss (including loss of principal), damage, cost or expense incurred by [Corus] in connection with the Loan, whether or not such loss, damage, cost or expense is caused by or arises out such actions."

## C.    **Borrower Defaulted on the Loan**

22.    Borrower failed to pay, within ten (10) days of its due date, the installments of interest due on November 1, 2007, and monthly thereafter, which constituted an "Event of Default" under the Loan Documents.  Although not obligated to do so, Corus sent Borrower and de Guardiola notice of the Event of Default on November 16, 2007.

23.    After an Event of Default, Corus was entitled, under Article 20, Section 20.1(c) of the Loan Agreement, to "declare the Note to be immediately due and payable. "  Although not obligated to do so, Corus sent Borrower and de Guardiola notice of the loan acceleration on November 29, 2007.

24.    Regardless of any prior Events of Default or acceleration, the Loan matured by its own terms on March 30, 2008 and became immediately due and payable in full on that date.

25.    Borrower has failed to pay the amounts due and owing pursuant to the Loan Documents.

26.    On January 14, 2008, Corus filed in the Circuit Court of the Sixth Judicial Circuit, Pinellas County, Florida (the "Florida Court"), a complaint against Borrower and others to foreclose the Mortgage, among other things, including a count against de Guardiola for breach of guaranty ("Foreclosure Action").  The count against de Guardiola for breach of guaranty was dismissed without prejudice on June 10, 2008.

**D.    de Guardiola is Liable Pursuant to the Terms of the Recourse Guaranty**

27.    At or around the time Corus filed the Foreclosure Action, Corus representatives conferred with de Guardiola by telephone regarding his liability under the Recourse Guaranty.

28.    de Guardiola threatened that if Corus pursued the Foreclosure Action, he would delay the Foreclosure Action for an extended period of time and if necessary, cause Borrower to file bankruptcy.  de Guardiola also threatened to force Corus to incur large enforcement costs in the Foreclosure Action and to hide his personal assets to prevent Corus from recovering on the Recourse Guaranty.

29.    Soon thereafter, Borrower and de Guardiola affirmatively sought to impede or impair Corus's right of recourse to the Project and engaged in acts intended to and that did have the effect of materially delaying, impeding or impairing Corus's right of recourse to the Project. Among other things, Borrower and de Guardiola filed responsive pleadings in the Foreclosure Action that included various affirmative defenses and counterclaims that are invalid under the applicable law, lack good faith and are designed to impede, impair and delay Corus's right of recourse to the Project.

30.    Borrower has failed to pay in full the amounts of 2006 and 2007 real estate taxes billed by local taxing authorities with regard to the Project.  Instead, Borrower has paid only a portion of the 2006 and 2007 real estate taxes billed to the Project, while filing court challenges

to the underlying assessments, which challenges have not been resolved in Borrower's favor. Borrower has also committed waste of the Project by deferring maintenance and repair of the Project.

31.     Subsequent to December 2007, Borrower breached its obligations under the Loan Documents to report NOI on the Project.  Consequently, Corus has been unable to determine if cash used to pay interest, taxes and insurance premiums on the Project came from "Permitted Sources," as defined in the Recourse Guaranty.

32.     By virtue of  Borrower's and de Guardiola's actions to impede, impair and delay Corus's right of recourse, de Guardiola became liable for all loss, damage, cost or expense incurred by Corus in connection with the Loan, regardless its cause.  As such, de Guardiola is obligated to pay Corus all amounts due and unpaid or unsatisfied under the Loan.  Currently, there is due, unpaid and unsatisfied under the Loan, an amount in excess of $63,602,076.91.

33.     Alternatively, de Guardiola is obligated to pay Corus (a) the Principal Guaranty Amount, as reduced by payments of interest, taxes and insurance premiums prior to the maturity date of the Loan but only such payments made from "Permitted Sources," plus accrued and unpaid interest thereon; (b) any 2006 and 2007 real estate taxes found to be due and unpaid; and (c) damages due to waste of the Project.  Said amount exceeds $4 million.

34.     Additionally, under the Recourse Guaranty, de Guardiola agreed that if "(a) [de Guardiola] defaults in its obligations pursuant to this Guaranty and this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (b) an attorney is retained to represent [Corus] in any bankruptcy, reorganization, receivership, or other proceeding affecting creditors' rights and involving Guarantor; or (c) an attorney is retained to provide advice or representation with respect to this Guaranty; or (d) an attorney is retained to represent

[Corus] in any proceedings whatsoever in connection with this Guaranty, then [de Guardiola] shall pay to [Corus] upon demand all reasonable attorney's fees, costs and expenses incurred in connection therewith (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due hereunder. . . ."  Corus has incurred and will continue to incur such Enforcement Costs.

35.     The Recourse Guaranty constitutes a valid and enforceable contract by and between Corus and de Guardiola, which Corus is entitled to enforce against de Guardiola.

36.     Corus has performed all required duties and obligations pursuant to the terms of the Recourse Guaranty, except such duties and obligations the performance of which has been excused by Borrowers' and de Guardiola's default and breach.

37.     Corus has made repeated demands to de Guardiola for payment.

38.     de Guardiola has breached the Recourse Guaranty by failing and refusing to pay to Corus the amounts due and owing pursuant to the terms of the Recourse Guaranty.

**WHEREFORE**, Plaintiff Corus Bank, N.A. requests that this Court enter a money judgment in its favor and against de Guardiola in an amount to be determined at the time of judgment, including reasonable attorneys' fees and expenses, and such other and further relief as the Court deems just and appropriate.

Dated:  June 12, 2008                    Respectfully submitted,

                                         CORUS BANK, N.A.

                                         _____s/ Monica J. Mosby_____
                                         One of the Attorneys for Plaintiff

Timothy J. Patenode
Monica J. Mosby
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200

08CV3409
JUDGE ANDERSEN
MAGISTRATE JUDGE MASON
EDA

# EXHIBIT A

## AMENDED AND RESTATED GUARANTY
Project Commonly Known as
"LANSBROOK VILLAGE APARTMENTS"

THIS AMENDED AND RESTATED GUARANTY (the "Guaranty") made as of April 2, 2007, by EDUARD DE GUARDIOLA, an individual residing in the State of Georgia (referred to as "Guarantor"), to and for the benefit of CORUS BANK, N.A., a national banking association, its successors and assigns ("Lender").

## RECITALS

A.     PRE Property B, L.L.C., a Delaware limited liability company, Carvill Limited Partnership, a Delaware limited partnership and Florida Land Parcels, L.L.C., a Delaware limited liability company (collectively, the "Borrowers," and each a "Borrower"), and Lender entered into that certain Loan Agreement dated July 15, 2005 (as amended, "Loan Agreement") whereby Lender agreed to make a secured loan (the "Loan") available to Borrowers in an amount up to One Hundred Twelve Million Five Hundred Sixty Thousand and 00/100 Dollars ($112,560,000.00), to finance the acquisition and conversion to condominiums of the Lansbrook Village Apartments in Palm Harbor, Florida (the "Project"). Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Loan Agreement.

B.     In connection with the Loan, Borrowers executed and delivered that certain Amended and Restated Tranche A Note and that certain Tranche B Note as each may be amended or modified (together, as amended, the "Note") in favor of Lender of even date herewith totaling the maximum principal amount of the Loan, payment of which is secured by (i) an Amended and Restated Mortgage, Assignment of Rents, Security Agreement and Fixture Filing made by Borrowers in favor of Lender on the Project, and (ii) the other Loan Documents.

C.     Borrower has requested that Lender enter into that certain Third Modification of Loan Documents of even date herewith (the "Third Modification") which will, among other things, reduce the interest rate on the Tranche B Note.

D.     Guarantor directly or indirectly owns an interest in each Borrower, derived material financial benefit from the Loan evidenced and secured by the Note, the Mortgage and the other Loan Documents, and will derive material benefit from the Third Modification.

E.     Lender has relied on the statements and agreements contained herein in agreeing to make the Loan. The execution and delivery of this Guaranty by Guarantor is a condition precedent to the effectiveness of the Third Modification.

## AGREEMENTS

NOW, THEREFORE, intending to be legally bound, Guarantor, in consideration of the matters described in the foregoing Recitals, which Recitals are incorporated herein and made a part hereof, and for other good and valuable consideration the receipt and sufficiency of which are acknowledged, hereby covenant and agree for the benefit of Lender and its successors,

indorsees, transferees, participants and assigns that the Original Guaranty shall be amended are restated in its entirety as follows:

1.    (I)    Guarantor irrevocably and unconditionally guarantees repayment of the principal balance of the Loan, provided that Guarantor's liability for such principal shall be limited to the Principal Guaranty Amount (defined below). Additionally, Guarantor guarantees repayment of interest accrued and unpaid from time to time on the principal guaranteed by Guarantor hereunder.

The "Principal Guaranty Amount" shall mean $8,000,000, provided that the following amounts paid to Lender by Borrower or Guarantor from Permitted Sources (defined below), but not otherwise, shall reduce the Principal Guaranty Amount:  (x) up to $5,000,000 for interest paid on the Loan from March 30, 2007 through March 30, 2008 ("Interest Guaranty Cap"); (y) up to $2,000,000 paid for real estate taxes and tax escrow deposits with Lender for taxes for 2007 and subsequent years from March 30, 2007 through March 30, 2008 (but no more than $1,350,000 paid on taxes for any tax year shall be credited) ("Tax Guaranty Cap") and (z) up to $1,000,000 paid for insurance premiums for the Project from March 30, 2007 to March 30, 2008 ("Insurance Guaranty Cap"). Payments for real estate taxes for 2006 or prior years (including amounts under protest) shall not be credited on the Principal Guaranty Amount.

"Permitted Sources" means, solely, (x) NOI of the Project from March, 2007 or any later month and (y) additional equity contributions to Borrower by Guarantor or other holders of equity interests in Borrower which equity contributions are not derived from the Project.  For avoidance of doubt, Net Sales Proceeds (or other proceeds of Lender's collateral) and loan proceeds shall not be deemed a Permitted Source and shall not be credited upon the Principal Guaranty Amount.  (The Budget Line Items for interest on the Loan, real estate taxes and insurance have been fully expended and Guarantor acknowledges and agrees no amounts will be reallocated for such purposes.)

Notwithstanding anything to the contrary contained herein, if Guarantor provides sufficient written evidence to Lender no later than April 30, 2008 that either (a) final, unconditional savings have been achieved with respect to real estate taxes due and owing for the Project from March 30, 2007 through March 30, 2008, such that the Guarantor has spent or deposited with Lender less than the Tax Guaranty Cap ("Guarantor Tax Contribution") and Lender has determined in its sole discretion that no further amounts are due and owing for real estate taxes for such period and (b) final, unconditional savings have been achieved with respect to insurance premiums for the Project from March 30, 2007 to March 30, 2008, such that the Guarantor has spent less than the Insurance Guaranty Cap ("Guarantor Insurance Contribution") and Lender has determined in its sole discretion that no further amounts are due and owing for insurance for the Project for such period, then the Interest Guaranty Cap shall be increased by: (i) the positive difference between the Tax Guaranty Cap and the Guarantor Tax Contribution, if any and/or (ii) the positive difference between the Insurance Guaranty Cap and the Guarantor Insurance Contribution, if any.

(II)    Guarantor irrevocably and unconditionally guarantees to Lender the payment when due of real estate taxes on the Project for 2006 (i.e. all amounts determined to be due and owing, including any interest or penalties, in excess of the amounts previously paid

2

under protest); additionally, Guarantor irrevocably and unconditionally guarantees to Lender the payment when due of real estate taxes on the Project for 2007 (in excess of any tax escrow deposits made by Borrower with Lender for such taxes).

(III)    Guarantor shall be liable for, and shall indemnify, defend and hold Lender harmless from and against, any and all loss (including principal), damage, cost, expense (including reasonable attorneys' fees and expenses), claim or other obligation incurred or suffered by Lender due to any of the following:

(a)    fraud of any Borrower or Guarantor;

(b)    the failure of any Borrower to apply Loan proceeds in accordance with the draw request pursuant to which such proceeds were borrowed;

(c)    the failure of any Borrower to construct, operate or market the Project for the purpose described in the Loan Agreement;

(d)    willful misconduct and/or intentional, material misrepresentations made to Lender by any Borrower or Guarantor, including, without limitation, the entry by any Borrower into any side agreement and/or any undisclosed modification to any Sales Agreement, which has not been disclosed to Lender and which has not been approved (in writing) by Lender;

(e)    the commission of waste with regard to the Project by any Borrower or Guarantor;

(f)    intentional misconduct or failure to pay the insurance premiums by any Borrower or Guarantor which results in a cancellation of insurance coverage for the Project;

(g)    the Transfer of the Project or any material portion of the Project in violation of the Loan Agreement or other Loan Documents by any Borrower or by Guarantor;

(h)    the failure of any Borrower or of Guarantor, to apply any income (including, but not limited to, sale proceeds, rental receipts and/or security deposits) generated by the Project to one of the following: (w) bona fide third party expenses of the Project, (x) amounts payable to Lender under the Loan Documents (y) so long as no Event of Default exists, as permitted under Section 15.1(dd) of the Loan Agreement or (z) otherwise to Lender upon demand;

(i)    the acceptance by any Borrower of rental payments more than thirty (30) days prior to the date such rental payments are due; and

(j)    any unknown and/or undisclosed liabilities (which are not covered by Borrowers' insurance) that may arise against any Borrower and/or the Property as a result of events that occurred on or prior to the Closing Date.

(IV)     All of Guarantor's indebtedness and obligations under this <u>Section 1</u> and <u>Section 2</u> below are referred to collectively as the "<u>Obligations</u>".  Guarantor's liability under each of Section 1(I), Section 1(II), Section 1(III) and <u>Section 2</u> is in addition to Guarantor's Obligations under each other of said Sections and is not in duplication thereof.

2.     In addition to Guarantor's other obligations described in this Guaranty, if: (i) any Borrower (its respective successors or assigns) files a petition under any section or chapter of the Bankruptcy Code (as defined in the Loan Agreement), as amended, or any similar law or regulation, or if any Borrower or Guarantor (or any affiliate of Guarantor) shall arrange, solicit, induce, finance or collude with others in the filing of any involuntary petition, case or proceeding against any Borrower under the Bankruptcy Code or a receivership proceeding against the Project, (ii) any Borrower or Guarantor affirmatively seeks, in any case, action, suit or proceeding to suspend, reduce, impede or impair Lender's right of recourse to the Project or any part thereof (provided that the bringing of a good faith counterclaim which if not raised in the foreclosure proceeding would be barred, and which does not seek to enjoin the enforcement action by Lender, or the good faith denial of facts alleged by Lender in an enforcement action shall not give rise to liability under this subsection (ii)); or (iii) Borrower or Guarantor engages in any act, omission, or misrepresentation which is intended to have the effect of and has the effect of materially suspending, delaying, reducing, impeding or impairing Lender's right of recourse to the Project or any part thereof then, Guarantor shall be liable for all loss (including loss of principal), damage, cost or expense incurred by Lender in connection with the Loan, whether or not such loss, damage, cost or expense is caused by or arises out of such actions.

3.     Guarantor does hereby (a) waive notice of acceptance of this Guaranty by Lender and, except as specifically set forth herein or in the other Loan Documents, any and all notices and demands of every kind that may be required to be given by any statute, rule or law, (b) agree to refrain from asserting against Lender any defense, right of set-off or other claim that Guarantor may have against Borrowers, (c) agree to refrain from asserting any defense, right of set-off or other claim that Guarantor or Borrowers may have against Lender or the holder of the Note, but Guarantor may bring a separate claim or separate action against such party, (d) waive any and all rights Guarantor may have under any anti-deficiency statute or other similar protections, (e) waive any and all rights and defenses Guarantor may have: (i) because the Note is secured by real property, (ii) under or by virtue of any anti-deficiency, "one form of action" and other similar Laws, or (iii) under or by virtue of Laws that would limit or discharge Borrowers' indebtedness, (f) waive presentment for payment, demand for payment, notice of nonpayment or dishonor, protest and notice of protest, diligence in collection and any and all formalities which otherwise might be legally required to charge Guarantor with liability, (g) waive any and all rights or defenses Guarantor may have by reason of any election of remedies by Lender, (h) waive, at all times while this Guaranty is in effect, any and all rights of subrogation, reimbursement, indemnification and contribution, and (i) waive any failure by Lender to inform Guarantor of any facts Lender may now or hereafter know about Borrowers, the Project, the Loan, or the transactions contemplated by the Loan Agreement, it being understood and agreed that Lender has no duty so to inform and that Guarantor is fully responsible for being and remaining informed by each Borrower of all circumstances bearing on the risk of nonperformance of the Obligations.  Credit may be granted or continued from time to time by Lender to Borrowers without notice to or authorization from Guarantor, regardless of the financial or other condition of Borrowers at the time of any such grant or continuation.  Lender

shall have no obligation to disclose or discuss with Guarantor its assessment of the financial condition of Borrowers. Guarantor acknowledges that no representations of any kind whatsoever have been made to it by Lender. No modification or waiver of any of the provisions of this Guaranty shall be binding upon Lender except as expressly set forth in a writing duly signed and delivered on behalf of Lender.

4.     Guarantor further agrees that Guarantor's liability as guarantor shall not be impaired or affected by any renewals or extensions of the Loan which may be made from time to time, with or without the knowledge or consent of Guarantor of the time for payment of interest or principal under the Note or by any forbearance or delay in collecting interest or principal under the Note, or by any waiver by Lender under the Loan Agreement, Mortgage or any other Loan Documents, or by Lender's failure or election not to pursue any other remedies it may have against Borrowers or Guarantor, or by any change or modification in the Note, Loan Agreement, Mortgage or any other Loan Document, or by any error or omission of any contractor, architect, engineer or other third party (without thereby waiving any recourse or other right or remedy Guarantor may have against any of the foregoing as a result of the error or omission, other than against Lender's Consultant or Lender), or by the acceptance by Lender of any additional security or any increase, substitution or change therein, or by the release by Lender of any security or any withdrawal thereof or decrease therein, or by the application of payments received from any source to the payment of any obligation owing to the Lender under the Loan Documents other than the indebtedness due under the Note ("Indebtedness"), even though Lender might lawfully have elected to apply such payments to any part or all of the Indebtedness, it being the intent hereof that, subject to Lender's compliance with the terms of this Guaranty, Guarantor shall remain liable for the performance of the Obligations guaranteed hereby, notwithstanding any act or thing which might otherwise operate as a legal or equitable discharge of a surety. Guarantor further understands and agrees that Lender may at any time enter into agreements with Borrowers to amend and modify the Note, Loan Agreement, Mortgage or other Loan Documents, and may waive or release any provision or provisions of the Note, Loan Agreement, Mortgage and other Loan Documents or any thereof, and, with reference to such instruments, may make and enter into any such agreement or agreements as Lender and Borrowers may deem proper and desirable, without in any manner impairing or affecting this Guaranty or any of Lender's rights hereunder or Guarantor's obligations hereunder.

5.     This is an absolute, present and continuing guaranty of payment and performance and not of collection. Guarantor agrees that this Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any other security or collateral given in connection herewith or with the Note, Loan Agreement, Mortgage or any of the other Loan Documents through foreclosure or sale proceedings, as the case may be, under the Mortgage or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrowers in any action brought hereunder or to commence any action against or obtain any judgment against any Borrower or to pursue any other remedy or enforce any other right. Guarantor further agrees that nothing contained herein or otherwise shall prevent Lender from pursuing concurrently or successively all rights and remedies available to it at law and/or in equity or under the Note, Loan Agreement, Mortgage or any other Loan Documents, and the exercise of any of its rights or the completion of any of its remedies shall not constitute a discharge of Guarantor's obligations hereunder, it being the purpose and intent of Guarantor that the obligations of Guarantor hereunder shall be absolute, independent and unconditional under

5

any and all circumstances whatsoever. None of Guarantor's obligations under this Guaranty or any remedy for the enforcement thereof shall be impaired, modified, changed or released in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Borrowers under the Note, Loan Agreement, Mortgage or other Loan Documents or by reason of the bankruptcy of any Borrower or by reason of any creditor or bankruptcy proceeding instituted by or against any Borrower. This Guaranty shall continue to be effective or be reinstated (as the case may be) if at any time payment of all or any part of any sum payable pursuant to the Note, Loan Agreement, Mortgage or any other Loan Document is rescinded or otherwise required to be returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation, or reorganization of any Borrower, or upon or as a result of the appointment of a receiver, intervenor, custodian or conservator of or trustee or similar officer for, any Borrower or any substantial part of its property, or otherwise, all as though such payment to Lender had not been made, regardless of whether Lender contested the order requiring the return of such payment.

6.    In the event Lender or any holder of the Note shall assign the Note to any lender or other entity to secure a loan from such lender or other entity to Lender or such holder for an amount not in excess of the amount which will be due, from time to time, from Borrowers to Lender under the Note with interest not in excess of the rate of interest which is payable by Borrowers to Lender under the Note, Guarantor will accord full recognition thereto and agree that all rights and remedies of Lender or such holder hereunder against Guarantor pursuant to the terms of this Guaranty shall be enforceable against Guarantor by such lender or other entity with the same force and effect and to the same extent as would have been enforceable by Lender or such holder but for such assignment; provided, however, that unless Lender shall otherwise consent in writing, Lender shall have an unimpaired right, prior and superior to that of its assignee or transferee, to enforce this Guaranty for Lender's benefit to the extent any portion of the Indebtedness or any interest therein is not assigned or transferred.

7.    If: (a) Guarantor defaults in its obligations pursuant to this Guaranty and this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (b) an attorney is retained to represent Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving Guarantor; or (c) an attorney is retained to provide advice or representation with respect to this Guaranty; or (d) an attorney is retained to represent Lender in any proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to Lender upon demand all reasonable attorney's fees, costs and expenses incurred in connection therewith (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due hereunder, regardless of whether all or a portion of such Enforcement Costs are incurred in a single proceeding brought to enforce this Guaranty as well as the other Loan Documents. If the operation of any provision of this Guaranty in any particular circumstance would be lawful, but if such provision would be unlawful if applied or enforced in other circumstances, then such provision shall nonetheless be enforceable in those circumstances in which such enforcement is legally permissible.

8.    The parties hereto intend and believe that each provision in this Guaranty comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Guaranty is found by a court of law to be in violation of any applicable local, state or federal ordinance,

CHI01_50418385_3_320527_00044 4/2/2007 2:15 PM

statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Guaranty to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Guaranty shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Lender or the holder of the Note under the remainder of this Guaranty shall continue in full force and effect.

9.    **TO THE GREATEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY WAIVES ANY AND ALL RIGHTS TO REQUIRE MARSHALLING OF ASSETS BY LENDER. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS RELATING TO THIS GUARANTY (EACH, A "PROCEEDING"), GUARANTOR IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE COUNTY OF PINELLAS AND STATE OF FLORIDA, AND (B) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. NOTHING IN THIS GUARANTY SHALL PRECLUDE LENDER FROM BRINGING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION. GUARANTOR FURTHER AGREES AND CONSENTS THAT, IN ADDITION TO ANY METHODS OF SERVICE OF PROCESS PROVIDED FOR UNDER APPLICABLE LAW, ALL SERVICE OF PROCESS IN ANY PROCEEDING IN ANY FLORIDA STATE OR UNITED STATES COURT SITTING IN PINELLAS COUNTY, FLORIDA MAY BE MADE, TO THE EXTENT PERMITTED BY LAW, BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO THE ADDRESS INDICATED BELOW, AND SERVICE SO MADE SHALL BE COMPLETE UPON RECEIPT; EXCEPT THAT IF SUCH PARTY SHALL REFUSE TO ACCEPT DELIVERY (AS OPPOSED TO UNABLE TO RECEIVE DELIVERY), SERVICE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME SHALL HAVE BEEN SO MAILED.**

10.    Any indebtedness of Borrowers to Guarantor now or hereafter existing is hereby subordinated to the performance of the Obligations. Guarantor agrees that, until the entire Indebtedness has been paid in full, Guarantor will not seek, accept, or retain for its own account, any payment from any Borrower on account of such subordinated debt, except as expressly permitted by the Loan Agreement. Any payments to Guarantor on account of such subordinated debt in violation of the foregoing sentence shall be collected and received by Guarantor in trust for Lender and shall be paid over to Lender on account of the Indebtedness without impairing or releasing the obligations of Guarantor hereunder.

11.    Any amounts received by Lender from any source on account of the Loan may be utilized by Lender for the payment of the indebtedness under the Loan Documents in such order

7

as Lender may from time to time elect. Additionally, if the indebtedness guaranteed hereunder is less than the full indebtedness under the Loan Documents, all rents, proceeds and avails of the Project (subject to the express terms of Section 1(I)), and all proceeds of realization of Lender's collateral, shall be deemed applied on the indebtedness of Borrowers to Lender that is not guaranteed by Guarantor until such unguaranteed indebtedness of Borrowers to Lender has been fully repaid before being applied upon the indebtedness guaranteed by Guarantor.

**12.  GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT UNDER THIS GUARANTY OR ANY OTHER LOAN DOCUMENT OR RELATING THERETO OR ARISING FROM THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS GUARANTY AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

13.  Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given (a) if hand delivered, when delivered; (b) if mailed by United States Certified Mail (postage prepaid, return receipt requested), three Business Days after mailing (c) if by Federal Express or other reliable overnight courier service, on the next Business Day after delivered to such courier service or (d) if by telecopier on the day of verified transmission so long as copy is sent on the same day by overnight courier as set forth below:

| | |
|---|---|
| Guarantor: | Eduard de Guardiola |
| | c/o Vista Realty Partners, L.L.C. |
| | One Midtown Plaza, Suite 1000 |
| | 1360 Peachtree Street, NE |
| | Atlanta, Georgia 30309 |
| | Telephone:　404-995-4446 |
| | Facsimile:　404-995-4434 |
| | |
| With a copy to: | Weissman, Nowack, Curry & Wilco, P.C. |
| | One Alliance Center, 4th Floor |
| | 3500 Lenox Road |
| | Atlanta, Georgia 30326 |
| | Attention:　Linda Curry, Esq. |
| | Telephone:　404-926-4516 |
| | Facsimile:　404-926-4716 |
| | |
| Lender: | Corus Bank, N.A. |
| | 3959 North Lincoln Avenue |
| | Chicago, Illinois 60613 |
| | Attention:　Brian Brodeur |
| | Telephone:　773-832-3452 |
| | Facsimile:　773-832-3540 |

With a copy to:    Corus Bank, N.A.
                3959 North Lincoln Avenue
                Chicago, Illinois 60613
                Attention:    Joel C. Solomon, Esq.
                Telephone:   773-832-3526
                Facsimile:    773-549-1603

And a copy to:    Katten Muchin Rosenman LLP
                525 West Monroe Street
                Chicago, Illinois 60661
                Attention:    Mark C. Simon, Esq.
                Telephone:   312-902-5301
                Facsimile:    312-577-4517

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

14.    In order to induce Lender to make the Loan, Guarantor makes the following representations and warranties to Lender set forth in this Section solely with respect to himself. Guarantor acknowledges that but for the truth and accuracy of the matters covered by the following representations and warranties, Lender would not have agreed to make the Loan.

(a)    Any and all balance sheets, net worth statements, and other financial data with respect to Guarantor which have heretofore been given to Lender by or on behalf of Guarantor fairly and accurately present the financial condition of Guarantor in all material respects as of the respective dates thereof.

(b)    The execution, delivery, and performance by Guarantor of this Guaranty does not and will not contravene or conflict with (i) to Guarantor's actual knowledge, any Laws, order, rule, regulation, writ, injunction or decree now in effect of any Government Authority, or court having jurisdiction over Guarantor, (ii) any contractual restriction binding on or affecting Guarantor or Guarantor's property or assets which may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty, (iii) the instruments creating any trust holding title to any assets included in Guarantor's financial statements, or (iv) the organizational or other documents of Guarantor.

(c)    This Guaranty creates legal, valid, and binding obligations of Guarantor enforceable in accordance with its terms.

(d)    Except as disclosed in writing to Lender, there is no action, proceeding, or investigation pending or, to the best of Guarantor's knowledge, threatened or affecting Guarantor, which could reasonably be expected to materially and adversely affect Guarantor's ability to fulfill his obligations under this Guaranty. There are no judgments or orders for the payment of money rendered against Guarantor for an amount in excess of $25,000 which have been undischarged for a period of ten (10) or more consecutive days and the enforcement of which is not stayed by reason of a pending appeal or otherwise. Guarantor is not in default under any agreements which could reasonably be

9

excepted to materially and adversely affect Guarantor's ability to fulfill its obligations under this Guaranty.

(e)    All statements set forth in the Recitals are true and correct.

All of the foregoing representations and warranties shall be deemed remade on the date of the first disbursement of Loan proceeds, on the date of each advance of Loan proceeds, and upon any extension of the Loan pursuant to the Loan Agreement. Guarantor hereby agrees to indemnify and hold Lender free and harmless from and against all loss, cost, liability, damage, and expense, including attorney's fees and costs, which Lender may sustain by reason of the inaccuracy or breach of any of the foregoing representations and warranties as of the date the foregoing representations and warranties are made and are remade.

15.    Guarantor shall deliver or cause to be delivered to Lender all of the Guarantor financial statements to be delivered in accordance with the terms of the Loan Agreement.

16.    This Guaranty shall be binding upon the heirs, executors, legal and personal representatives, successors and assigns of Guarantor and shall not be discharged in whole or in part by the death or the dissolution of Guarantor. Without limiting any provision hereof or Lender's rights under applicable Law, (x) from and after the date of this Guaranty, Guarantor shall not transfer any of his material assets to a trust or other vehicle for estate planning purposes without first providing Lender with a replacement guaranty in form acceptable to Lender in Lender's sole discretion and (y) Guarantor shall not otherwise transfer any of his material assets other than for reasonably equivalent consideration. If more than one party executes this Guaranty, the liability of all such parties shall be joint and several.

17.    **IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, PERFORMANCE OF THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER, THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF ILLINOIS AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.**

18.    Lender shall be entitled to honor any request for Loan proceeds made by Borrowers and shall have no obligation to see to the proper disposition of such advances. Guarantor agrees that his obligations hereunder shall not be released or affected by reason of any improper disposition by any Borrower of such Loan proceeds.

19.    This Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

20.    Any and all amounts required to be paid by Guarantor hereunder shall be paid to Lender in United States currency at such place as Lender may, from time to time, in writing appoint.

21.    Except as otherwise provided herein, Guarantor and Lender do not intend the benefits of this Guaranty to inure to any third party, other than Lender's successors and/or

assigns and no third party (including Borrowers), other than Lender's successors and/or assigns shall have any status, right or entitlement under this Guaranty.

22.    This Guaranty may not be supplemented, extended, modified or terminated except by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

## SIGNATURE PAGE TO FOLLOW

CHI01_50418385_3_320527_00044 4/2/2007 2:15 PM

IN WITNESS WHEREOF, Guarantor has delivered this Guaranty as of the date first written above.

GUARANTOR:

_____
EDUARD de GUARDIOLA, an individual

AMENDMENT AND RESTATED ACCEPTED:

CORUS BANK, N.A.

By:_____
Name: Brian J. Brodeur
Title: Senior Vice President

CHI01_50418385_3_320527_00044 4/2/2007 2:15 PM